PER CURIAM.
The Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, plaintiff below, appeals from a summary judgment entered by the circuit court of Monroe County in favor of Mark Barnett, f/k/a Mark Bartecki, Lynn H. Kephart, and Spoonbill Sound, Inc. The circuit court determined that the appellees, defendants below, were entitled to judgment as a matter of law, based upon the following findings of fact and conclusions of law:
“FINDINGS OF FACT
“1. This is an action brought by Plaintiff the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida for trespass seeking damages and a mandatory and permanent injunction.
“2. The property which is the subject of this action is owned by Plaintiff and lies below the mean high water line immediately adjacent to upland property described as Government Lot 8, Section 28, Township 66 South, Range 28 East, Cudjoe Key, Monroe County, Florida.
“3. Defendants Barnett and Kephart are the owners of the upland property located immediately adjacent to the submerged lands owned by Plaintiff. Spoonbill Sound, Inc., is the developer of a proposed single family development on such upland property. Defendants’ plans call for an 8-slip dock to serve the residents of the upland development.
“4. Despite considerable litigation, the Department of Environmental Regulation has issued a permit for the dock, Bartecki v. Beardsley, 471 So.2d 1325 (Fla. 1st DCA 1985), and Defendants have received approval from Monroe County for the proposed development, Bartecki v. Depart- *1204 merit of Community Affairs, 498 So.2d 972 (Fla. 1st DCA 1986). The United States Army Corps of Engineers has also issued a permit for the dock.
“5. Defendant Barnett applied to Plaintiff for permission to use the state-owned submerged lands which are the subject of this action. On April 8, 1983, the Department of Natural Resources, Division of State Lands (the ‘Department’), acting on behalf of Plaintiff, issued a consent of use (the ‘Consent of Use’) to Barnett, authorizing the construction of the dock on state-owned submerged lands (Exhibit ‘A’ to the Complaint). The Consent of Use provides, in pertinent part:
The proposed project is not in conflict with any of our existing rules; therefore we have no objections ... Please consider this the authority sought under section 253.77, Florida Statutes, to pursue this project.
“6. On June 24, 1983, the Department sent a letter to Barnett’s agent (Exhibit ‘B’ to the Complaint), the complete text of which is set forth below:
We have been advised that the above captioned application has been denied a variance by Monroe County Board of Adjustment.
As a variance will not be issued for the project, this Department is withdrawing its consent and will place your application in an inactive status and no further action will be taken on it.
If you have any questions concerning this matter, please do not hesitate to contact Grant Gelhardt, at 904/488-2297.
“7. By letter dated July 6, 1983, Barnett’s agent requested a formal administrative hearing pursuant to Section 120.57(1), Florida Statutes, regarding the Department’s letter of June 24, 1983.
“8. On August 10, 1983, the then-Deputy General Counsel for the Department wrote a letter to Barnett’s attorney (Exhibit ‘C’ to the Complaint, document 1) stating, in pertinent part:
As agreed, your client’s request for a hearing will, for the time being, be held in abeyance. I have requested Department staff to conduct an on-site inspection of the area of the proposed structure and to assess impacts on marine life. You will be notifed shortly of the staff’s findings and the Department’s intention to act upon your client’s application. The right to request an administrative hearing will be activated at that time.
Plaintiff did not notify Barnett ‘shortly’ of its intention to act or of his ‘right to request an administrative hearing.’
“9. By letter dated December 8, 1986, Barnett's attorney requested reinstatement of the Consent of Use. More than three and one-half months later, the Department responded (Exhibit ‘C’ to the Complaint, document 2) stating, in pertinent part:
Now pending before the Department of Natural Resources is your request for hearing, related to the Department’s withdrawal of its consent of use; this request for hearing [made more than three and one half years ago] will [continue to] be held in abeyance, as there has been no final agency action of the application that would warrant an administrative hearing at this time.
* * * * * *
Once all appropriate permits, including local development orders, have been obtained, the application will be reviewed based on the current rules, guidelines and policies for docking facilities in the Florida Keys, including the Florida Keys Marina Siting Criteria and the current provisions of Rule 18-21 governing applications.
“10. Defendants thereafter notified the Department of their position that the letter withdrawing the Consent of Use was illegal and of no force or effect.
“11. On or about September 26, 1987, Defendants commenced construction of the dock. On September 26, 1987, the Florida Marine Patrol issued Defendant Kephart a citation for allegedly violating Section 253.-77, Florida Statutes (Exhibit ‘D’ to the Complaint).
“12. On October 6, 1987, Plaintiff filed this suit for trespass seeking damages and a mandatory and permanent injunction.
*1205 “13. On October 26, 1987, Defendants served their Answer, Affirmative Defenses and Counter-Claim for declaratory relief pursuant to Chapter 86, Florida Statutes. Thereafter this matter came before the Court on Defendants’ Motion for Summary Judgment.
“CONCLUSIONS OF LAW
“1. Under Article X, Section 11, of the Florida Constitution, sovereignty submerged lands are held in trust for all the people of this State. Private use of such submerged lands is allowed when ‘authorized by law.’ The legislature has authorized Plaintiff to administer the State’s sovereignty lands, and has directed Plaintiff to adopt rules and regulations governing the exercise of its statutory duties. Sections 253.03(1) and (7), Florida Statutes. The Department of Natural Resources, Division of State Lands (the ‘Department’), is empowered to ‘perform all staff duties and functions’ related to the administration of the submerged lands held by Plaintiff. Section 253.002, Florida Statutes.
“2. In accordance with Section 253.-03(7), Florida Statutes, Plaintiff has adopted rules governing the administration of sovereignty lands and those rules are contained in Chapter 18-21, Florida Administrative Code, (formerly, Chapter 16Q-21, in effect at the time Defendant Barnett requested and Plaintiff issued the Consent of Use). The Rules ‘implement the administrative and management responsibilities’ of both Plaintiff and the Department regarding sovereignty lands. Section 18-21.-002(1), Florida Administrative Code.
“3. Section 18-21.005(1), (formerly 16Q-21.05) provides that any activity on sovereignty lands requires a lease, easement, consent of use, use agreement or other form of approval. For the type of facility which is the subject of this action (i.e., a small non-commercial dock), a consent of use is required. Section 18-21.005(l)(a)2 (formerly 16Q-21.05(l)a). Plaintiff’s rules define ‘consent of use’ as ‘a non-possessory interest in sovereignty lands created by an approval which allows the applicant the right to erect specific structures or conduct specific activities on said lands.’ Section 18-21.003(13) (formerly 16Q-21.03(11)). Section 18-21.007 (formerly 16Q-21.07) sets forth the information which each applicant for a consent of use must provide.
“4. Plaintiff has admitted it issued Defendant Barnett a consent of use for the construction of a dock on the submerged lands on which it now claims a trespass. It further admits that at the time it issued the Consent of Use it had received all required information for issuance of the Consent of Use. The Consent of Use states that the proposed project is not in conflict with any of Plaintiff’s existing rules and constitutes authorization to proceed in accordance with Section 253.77, Florida Statutes.
“5. On June 24, 1983, the Department attempted to withdraw the Consent of Use on the ground that a local government variance for the project had been denied. Plaintiff has admitted, however, that local government approval was not a condition precedent to issuance of a consent of use and was not a basis for the revocation of a previously issued consent of use. A review of Chapter 253, Florida Statutes, and Chapter 16Q-21, Florida Administrative Code (the predecessor to Chapter 18-21), confirms this.
“6. Plaintiff has identified no other case in which it has denied or revoked a consent of use on the basis of an action taken by local government.
“7. Plaintiff is an agency within the meaning of Section 120.52(1), Florida Statutes. Plaintiff has not applied to the Florida Administration Commission for exemption and no Florida Statute exempts Plaintiff from the requirements of the Florida Administrative Procedure Act. Plaintiff admits this.
“8. The Department’s letter of June 24, 1983, did not lawfully revoke the Consent of Use in accordance with the requirements of the Florida Administrative Procedure Act. No statute or rule authorizes Plaintiff to revoke a consent of use. Even assuming Plaintiff has the authority to revoke a consent of use, there are no legislative or regulatory standards setting forth the bases on which a consent of use may be *1206 revoked. The reason for withdrawal given in the Department’s letter of June 24,1983, was insufficient as a matter of law. An administrative agency may not revoke a license or a permit for some cause not clearly within the ambit of its statutory authority. Federgo Discount Center v. Department of Professional Regulation, 452 So.2d 1063, 1066 (Fla. 3d DCA 1984); Davis v. Department of Professional Regulation, 457 So.2d 1074 (Fla. 1st DCA 1984); Cohn v. Department of Professional Regulation, 477 So.2d 1039 (Fla. 3d DCA 1985); Lewis v. Criminal Justice Standards and Training Commission, 462 So.2d 528, 530 (Fla. 1st DCA 1985).
“9. This court is fully aware that Plaintiff acting in its proprietary capacity as owner of the State’s sovereignty submerged lands is different from other state agencies acting in a regulatory capacity. Graham v. Edwards, 472 So.2d 803, 807 (Fla. 3d DCA 1985). But that distinction is of no benefit to Plaintiff in this case. Once having granted a consent of use to Defendant Barnett, it could not revoke that consent without complying with the Florida Administrative Procedure Act to which it is admittedly subject.
“10. Plaintiff contends that rights acquired from the State in its proprietary capacity may be revoked at any time before the holder changes his position in reliance on the right. Plaintiff has cited no legal authority to support this contention. The freedom to act in an arbitrary manner is not available to government in either its proprietary or regulatory capacity. Moreover, there is ample uncontroverted evidence that Defendants substantially changed their positions in reliance on the Consent of Use, including changing their plans from multiple docks to a single dock at DNR’s insistence, at considerable expense.
“11. Recognizing, albeit belatedly, the weakness of its position, Plaintiff put forward two arguments in an effort to avoid summary judgment. Plaintiff first argued that the consent of use was withdrawn for reasons (set forth in the MacFarland affidavit) other than those set forth in the Department’s letter of June 24, 1983. An administrative agency which takes action against the holder of a permit or other right cannot strip the holder of that right on the basis of undisclosed ‘concerns’. The Department’s letter of June 24, 1983, states the basis for agency action.
“12. Even assuming, as the Court must for purposes of Defendants’ Motion for Summary Judgment, that Plaintiff had other grounds for revoking the Consent of Use, none of those grounds constituted a lawful basis for revoking the consent of use, for the reasons described in paragraph 8 above. Moreover, even if Plaintiff could lawfully revoke the Consent of Use for the reasons contained in the MacFarland affidavit, a withdrawal for reasons not disclosed to Barnett fails to comply with the procedural requirements of the Florida Administrative Procedure Act.
“13. The revocation of the Consent of Use being unlawful, Plaintiff advanced a second and altogether new position in an attempt to avoid summary judgment. According to the affidavit of James MacFar-land, the Consent of Use was ‘erroneously’ issued in violation of 16Q-21.04. In contrast, the Consent of Use, also signed by MacFarland, specifically states the Defendants’ dock ‘is not in conflict with any of our existing rules’. MacFarland’s assertion that the Consent of Use was issued in error is a mere legal conclusion and is not supported by any facts. Plaintiff admits it had all required information at the time the Consent of Use was issued.
“14. Paragraph 8 of Plaintiff’s Complaint states:
By letter dated April 8, 1983 (a copy of which is attached and incorporated as Exhibit A), the Florida Department of Natural Resources (DNR), on behalf of the BOARD and pursuant to s. 253.002, Florida Statutes, advised Defendants that it had no objection to the construction of the proposed dock.
Nowhere in the Complaint is it alleged that the Consent of Use was erroneously issued. Rather, Plaintiff alleged that an action taken by Monroe County after the Consent of Use was issued, authorized Plaintiff’s with *1207 drawal of the Consent of Use. This is the position Plaintiff has consistently taken as evidenced by the correspondence attached to the Complaint.
“15. Although Plaintiff has very broad discretion in granting or denying private uses of sovereignty submerged lands, such discretion does not include the right to make a post hoc reversal (or claim of illegality) regarding a prior lawful exercise of discretion, in order to suit the purposes of litigation. Even if the Department had made an ‘error’ in reviewing the application for the consent of use, it was ‘under a statutory duty to investigate and make that determination when an application is initially granted.’ It cannot thereafter revoke its approval on the basis of its own mistake; ‘otherwise, there would be no finality to the agency’s action ... ’ TriState Systems, Inc. v. Department of Transportation, 500 So.2d. 182, 183 (Fla. 1st DCA 1986).
“16. Despite the Defendants’ request for reinstatement of the Consent of Use, the Department declined to do so stating it would begin to review the application (previously granted) after all other government approvals had been obtained in accordance with criteria not in existence when the Consent of Use was originally applied for and issued. No Florida statute or rule allows Plaintiff to withdraw a previously issued consent of use, refuse to take action on the applicant’s request for reinstatement thereof until all other governmental permits have been obtained, and to apply, at that time, new standards it has adopted in the interim.
“Accordingly, Defendants’ Motion for Summary Judgment is GRANTED, and IT IS ADJUDGED that Plaintiff, BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND OF THE STATE OF FLORIDA, take nothing by this action and that Defendants, MARK BARNETT, LYNN H. KEPART [sic] and SPOONBILL SOUND, INC. go hence without day. Jurisdiction is reserved to determine and award costs to Defendants, upon motion.”
We approve the trial court’s findings of fact and conclusions of law and, accordingly, affirm the summary judgment.
AFFIRMED.